UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANERGY THIN FILM POWER AMERICA INC., <br><br> Plaintiff, <br><br> v. <br><br> COLUMBIA SOLAR ENERGY, LLC, <br><br> Defendant. | Case No. 15-cv-05735-RS <br><br> **ORDER FOR FURTHER BRIEFING** |

As noted in a prior order, this action arises from a complex, multi-party transaction, involving the development of a solar electric generating facility in Pittsburg, California. Two of the parties, plaintiff Hanergy Thin Film Power America, Inc., and defendant Columbia Solar Energy, LLC., are now engaged in a payment dispute, with each side asserting contractual claims against the other. Hanergy has moved for summary judgment, in whole or in part, contending the undisputed facts permit a conclusion that the project achieved "Substantial Completion" and "Final Completion" as defined in the relevant contract between the parties, and that as a result, Hanergy is now owed a Substantial Completion payment of $6,368,205.29 and a Final Completion Payment of $3,263,990.56.

Columbia previously was a subsidiary of Hanergy[1], and its primary business was

---

[1] Various related entities using "Hanergy" in their names were involved in the transactions at issue. At this juncture, the distinctions among them are not relevant. For convenience, this order

development of the solar power project at issue. In broad terms, the various agreements called for Hanergy to sell Columbia and the project to PSEG Solar California, LLC, while the project was still under development, but after certain conditions had been satisfied. That sale was the subject of a Purchase and Sale Agreement ("the PSA") between Hanergy and PSEG. The PSA was executed when Columbia was still a Hanergy subsidiary.

The contract expressly at issue in this action was a "Master Procurement Agreement" ("the MPA"), entered simultaneously with the PSA, whereby Hanergy agreed to procure and provide to Columbia certain equipment and services necessary to develop the project. Although the MPA and the PSA are separate agreements, involving separate parties, it is undisputed that they both relate to the same basic transaction, as do several other agreements involving additional parties including Pacific Gas & Electric Company, a construction company, and the California Independent System Operator Corporation ("CAISO").

Hanergy acknowledges that it has moved for summary judgment at a very early stage in this litigation, before discovery has progressed, much less been completed. It nevertheless contends that when the relevant contracts are read in light of the undisputed facts, it is entitled to judgment as a matter of law, or at least to a determination in its favor on certain subsidiary issues.[2]

Hanergy's moving papers focus on establishing its contention that it has performed all of its obligations under the MPA between it and Colombia that were precedent to its right to receive the Substantial Completion and Final Completion Payments. Hanergy's reply brief makes clear, however, it is not contending, at least for purposes of this motion, that satisfaction of its

---

will refer to any and all of them simply as "Hanergy."

[2] Columbia complains that the motion is procedurally deficient because it fails to identify sufficiently each claim or defense—or part thereof—on which summary judgment is sought. Although Hanergy perhaps could have tied its motion to the claims pleaded in its complaint with greater specificity, the motion adequately discloses that Hanergy is seeking either a judgment in its favor for the amounts claimed, or whatever subset of findings in its favor may be warranted. *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.")

obligations to PSEG under the PSA are irrelevant. As crystalized following the reply brief, the dispute between the parties appears to turn primarily on whether Hanergy had any obligation to ensure and verify that a certain "Network Upgrade" known as the "East Shore-Oakland J 115 kV Reconductoring Project & Pittsburg-San Mateo 230 kV Looping Project" ("the East Shore-Oakland Reconductoring") had been completed before closing the sale of Columbia to PSEG. Columbia contends that because the East-Shore Oakland Reconductoring had not in fact been completed (or even started), Hanergy breached the PSA and made material misrepresentations. As a result, Columbia contends, the value of the solar generating facility is substantially less than anticipated.

Columbia has made an adequate showing that, at least for purposes of a summary judgment motion, Hanergy cannot prevail merely by showing full performance under the MPA, standing alone. Columbia has also shown there is, at a minimum, a triable issue of fact as to whether Hanergy's obligations under the PSA included ensuring and/or representing that the condition of Section 2.6(h) of that agreement had been satisfied prior to closing on the sale of Columbia to PSEG.[3]

The question, therefore, is whether Section 2.6(h) required completion of the East-Shore Oakland Reconductoring. Section 2.6(h) called for the solar power plant project to have achieved "all of the Mechanical Completion Requirements set forth in Exhibit J" to the PSA. Exhibit J, in turn, required that all "Network Upgrades" to "have been completed in accordance with the SGIA."

The "SGIA"—Small Generator Interconnection Agreement—was formed among Columbia, PG&E, and CAISO. The SGIA specifies the "network upgrades" applicable to this project in Attachment 6, at p. 52. Under the language of the document, the "network upgrades" are only those shown in Table 6-1. The East-Shore Oakland Reconductoring is not among them.

---

[3] While Hanergy likely is correct that it had no "affirmative obligation" to carry out or pay for the work contemplated by Section 2.6(h), that is not the issue.

1  Columbia nonetheless argues the East-Shore Oakland Reconductoring "was one of the
2  network upgrades required under the SGIA and so was one of the network upgrades required for
3  the Project to achieve Mechanical Completion under the PSA." All of Columbia's breach of
4  contract and misrepresentation claims appear to flow from this premise. Columbia contends the
5  absence of the East-Shore Oakland Reconductoring from Table 6-1 is not dispositive because
6  Attachment 6 also makes reference to "Appendix A, of the Cluster 3 & 4 Phase II Final Study
7  Report, dated November 5, 2012" (and an addendum to that appendix), which Columbia insists
8  incorporates a reference to the East-Shore Oakland Reconductoring.

9  The problem with Columbia's argument is that the Cluster 3 & 4 Phase II Final Study
10 report encompassed many more projects across Northern California than the one at issue here.
11 Columbia relies on the fact that Table 4.4 of the report mentions the East-Shore Oakland
12 Reconductoring. That table, however, appears to be only a list of "new transmission projects"—
13 not directly limited to the Columbia project. Indeed, Appendix A of the report, and its addendum
14 (which *are* specific to the Columbia project) expressly state that the necessary network upgrades
15 are those shown in *Table 4.5* of the report, not Table 4.4. Once again, the East-Shore Oakland
16 Reconductoring does not appear in that table.

17 Hanergy's moving papers were primarily directed at establishing its full performance
18 under the MPA and its argument that it breached no affirmative obligation under subsections (b)
19 and (c) of section 2.6 of the PSA. As such, Columbia has not had an opportunity to respond to the
20 arguments in the reply brief, and the tentative conclusions set out above—namely, that even
21 assuming Hanergy cannot recover any or all of what it seeks under the MPA if there was a breach
22 or misrepresentation under the PSA, and even assuming it had disclosure and warranty obligations
23 under the Section 2.6(h) of the PSA or otherwise, completion of the East-Shore Oakland
24 Reconductoring simply was not a condition precedent under any of the relevant contracts.

25 Accordingly, within 20 days of the date of this order, Columbia may file a supplemental
26 brief, not to exceed 15 pages, addressing (1) the issues discussed above, and; (2) whether, if the
27 Court concludes no factual disputes preclude a conclusion that completion of the East-Shore

1 Oakland Reconductoring was not a condition of any of the relevant contracts, there is any other
2 reason judgment in Hanergy's favor should not be entered.
3 　　　No later than 10 days thereafter, Hanergy may file a supplemental reply, also not to exceed
4 15 pages.  The matter will then again be submitted for decision, or set for argument, in the Court's
5 discretion. The pending motion to dismiss Columbia's counterclaim will remain under submission,
6 in light of the potential impact a ruling on the summary judgment may have on the viability of the
7 claims advanced.

**IT IS SO ORDERED**.

Dated:  December 9, 2016

_____
RICHARD SEEBORG
United States District Judge